UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20973-CR-Altonaga

UNITED STATES OF AMERICA,
:
    Plaintiff,:

v.
:
DANIEL ENRIQUE-MARIN,:

    Defendant.:
:

**DANIEL ENRIQUE-MARIN'S MOTION SUPPRESS 404(B) EVIDENCE ON FOURTH AMENDMENT GROUNDS AND REQUEST FOR A SUPPRESSION HEARING**

The Defendant, DANIEL ENRIQUE-MARIN, through undersigned counsel, respectfully moves to suppress the Government's evidence offered pursuant to Rule 404(b) on the grounds that the evidence was seized in violation of the Fourth Amendment and moves for a suppression hearing. In support thereof the Defendant submits as follows:

**I. Introduction**

The government has advised the defendants that it intends to offer evidence pursuant to Rule 404(b) concerning the seizure of funds from the defendant Marin as well as funds seized from co-defendant Conde. The 404(b) evidence arose from four separate incidents that took place in the state of Texas. Each incident will be discussed separately. For the reasons set forth below, the

1

search and seizure of the funds by law enforcement in each of those incidents violated the Fourth Amendment.

## II.     Search of July 21, 2005.

On July 21, 2005, defendant Marin was a back-seat passenger in a car that was stopped along Interstate 10 in Chambers County Texas by a Chambers County Task Force officer. The car was driven by an individual named Alexis Castro. Another individual named Rubio may have been a passenger in the car. The DEA-6 Report provided by the government states that the car was stopped for a traffic violation, but it does not describe the violation nor does it say that any traffic citation was given.

The officer asked Castro and defendant Marin a series of questions. He asked where they were headed, where they were coming from, why they traveled to Florida, the purpose of their trip, and Rubio's travel plans. The officer finally asked if they were transporting drugs or money in the car.  According to the report, Castro gave the officer consent to search the car. It states that defendant Marin also gave consent to search the car.

According to the officer, Castro became very nervous while being questioned. The officer then "had the subjects follow him back to his office." At police station, the officers removed the gas tank of the car and located a trap door which led to a secreted compartment containing 20 shrunk wrapped bags of cash. After the cash was removed from the compartment, a narcotics dog

2

alerted to the presence of narcotics. The defendant and the others were then arrested.

Assuming the initial stop was valid as a traffic stop, the continued detention and questioning of the defendant is reasonable only if supported by articulable suspicion. *United States v. Acosta,* 363 F.3d 1141 (11th Cir. 2004). The police can not engage in a fishing expedition following a traffic stop by questioning the driver in an effort to develop reasonable suspicion. *United States v. Pruitt*, 174 F.3d 1215 (11th Cir. 1999)(after stopping the defendant for speeding, began to question about the purchase price of his van, where his family lived, his itinerary, identity of other occupants of the van and his relationship to them.)  As in *Pruitt*, the officer wrongfully violated the Fourth Amendment by detaining and questioning in an attempt to develop reasonable suspicion to request a search.

Even if the initial detention was reasonable, ordering the defendant to follow the officer to the station turned the initial detention into a more intrusive detention.  It was equivalent to an arrest and could only be supported by probable cause.  Because there was no probable cause to bring the defendant to the station, this seizure also violated the Fourth Amendment.

This search was more than a cursory search of the compartments of a car. It required the officers to take apart portions of the structure of the car.  The report does not say that the defendant consented to going to the police station where he would have to remain for an extended period of time while the car was disassembled. Taking defendant to the station for the search exceeded the

bounds of any *Terry* stop and required probable cause. *United States v. Virden* 488 F.3d 1317 (11th Cir. 2007)(placing the defendant in a police car and taking his car to a location two miles away where a drug dog was located exceeded a *Terry* stop and amounted to a seizure requiring probable causes.)

### III.   Search of December 29, 2005.

On December 29, 2005, defendant Marin and co-defendant Conde were stopped in Kimble County, Texas along Interstate 10 by a deputy sheriff. Conde was driving, while Marin sat in the passenger seat. According to a DEA-6 report of the incident, the car was traveling 79 in a 75 speed zone. It also noted that deputy justified his stop because the car switched lanes without using the blinker and the front seat passenger was not wearing a seat belt.

The deputy asked for the standard information including license and registration. According to the DEA-6 report, the deputy began to ask Conde a series of questions: whether Conde still lived in Oregon; if they were coming from Florida; who rented the rental car; the name of his passenger; where they were headed; what they were going to do in Portland Oregon; if the passenger lived in Oregon; what kind of work Conde did; and how long he knew his passenger.

In the course this interrogation, the deputy concluded that Conde had become nervous and that Conde was unsure about the reasons for their trip. The deputy then asked Marin for identification. He asked Marin where he rented the car as Conde told the deputy that the car was a rental. He then asked Marin

where they were coming from, the reason for their travel to Portland, where he currently lived, and how long they would be in Portland.

Based upon his opinion of nervousness, the perceived conflicting information, and the fact that Miami is known origin for illegal contraband, the deputy believed he had reasonable suspicion to ask for consent to search the car.  Marin refused to give consent.  The deputy then requested the presence of a narcotics dog.  According to the DEA-6 report, both defendants then said they did not mind waiting for a dog to arrive (despite the fact that the defendant Marin had just refused to give consent for a search.)  The dog made a positive alert and the defendants were told that the officers would search the car.

The DEA-6 states that $10,000 was found in Conde's pocket and about $1,700 in cash was found in Marin's pocket.  The cash was not found in the car and the report does not explain how the deputy seizure of the cash from the defendants' person was related to the search of the car, but there is no evidence that the defendants consented to a personal search.

The report also states that both had two "very large suitcases filled with new high end clothes and numerous pieces of jewelry and watches." It is also not clear how the suitcases were searched but there is no evidence of consent to the search.

The detention of the defendants was clearly in violation of search *United States v. Pruitt, Id.*  The officer went beyond the scope of the encounter necessary for giving a traffic ticket.  In fact, it is doubtful any officer would have stopped a car for driving four miles over the speed limit, and the report does not

5

indicate that a ticket was issued to the driver.  Furthermore, the information they gave the officer did not result in any articulable suspicion to further detain and question the defendants, however brief that encounter may have been.  *United States v. Acosta, Id.*  Additionally, there is no explanation in the DEA-6 reports for the search of the defendants' pockets, where the money was actually found.  There was no articulable suspicion pursuant to *Terry*, let alone any probable cause, to justify a search of the defendants' pockets.

### IV.  Search of July 19, 2006.

On July 19, 2006, defendant Marin and co-defendant Conde flew from Houston Texas to El Paso Texas on Southwest Airlines.  Agents of the El Paso task force received information that the defendant Marin and co-defendant Conde paid cash for a one-way ticket on a Southwest Airlines flight.  As a result of this information, the DEA dispatched Task Force agents, including two K-9 officers, to wait at the terminal of the El Paso airport for their arrival.

When the defendants arrived, the agents followed them to baggage claim to wait for their luggage.  One of the K-9 officers had his narcotic dog sniff two bags checked by the defendants and the dog gave a positive indication of the presence of a narcotic odor.  Officers also claim Conde had a large bulge in his from left pants pocket.

As the defendants attempted to walk out of the airport with their luggage, they were stopped by at least four law enforcement officers.  The DEA-6 report of

this incident indicates that each of the defendants may have been separated and questioned separately by at least two officers.

The officers asked ach questions the nature and purpose of their trip. They were asked to show the officers their respective tickets and identification. When the officer asked about whether they were carrying any narcotics or large sums of money, codefendant Conde said he had approximately $8,000 in his front pocket. One of the officers asked Conde to remove the money from his pocket. After Conde complied, he "asked" Conde to go with him to the airport police office to talk about the currency. According to the DEA-6 report Conde complied.

Marin was treated much the same. He was asked about the purpose of his travel and other specifics about his trip. He was asked if he was carrying narcotics or large amounts of cash. He told the officer he had a total of $14,000. The officer asked where he had it, and he told them it was in his pocket. The DEA-6 states that he showed them the cash folded and tied with a rubber band. The Detective then asked Marin if he would like to continue the interview to an office inside the airport. According the DEA-6 Marin complied, and he was taken to the airport police station.

Once inside the station, they were asked for consent to search their bags. According to the DEA report they gave consent. Each was questioned about how they came to possess their respective money. No drugs were found in either bag by the officers. Marin was questioned about how much he carried and he showed them the funds he carried. At some point, the officers apparently

seized all the money. It was counted and the agents found the denominations to be largely one hundreds. The officers seized the money from each defendant and subjected the cash a sniff test by the narcotics dog and the dog tested positive for each. After running the defendants' arrest records, the officers decided to seize the money as drug proceeds, but neither defendant was arrested.

The reasonableness of a *Terry* stop by police at an airport depends on the level of intrusion by the officers. *United States v. Acosta Id.* A brief encounter with the police in an airport, where a person believes that he or she is not free to leave, can only be justified by articulable suspicion that a person has or is about to commit a crime. *United States v. Espinosa-Guerra*, 805 F.2d 1502 (11th Cir. 1986). When the totality of the circumstances of a detention show that the initial brief detention has become too more intrusive, it requires probable cause. *Id.*

When the defendants were stopped and questioned the agents, they complied with every request. When faced with this showing of authority, the defendants showed their tickets, produced their license, and took money from their pockets when asked about cash. They clearly did not believe that had a right to refuse these requests. They gave no indication that they could refuse to answer questions. At that moment, there is no indication they were free to leave the airport with their belongings. In light of the circumstances of this stop and given the number of officers, the defendants did not freely consent to show their funds to the officers. It is clear that these defendants could not refuse to answer the questions or comply with the requests to the officers their cash.

Even if they gave consent during this initial encounter, taking the defendants to the police station in the airport went beyond the brief detention and the subsequent detention and a search was improper without probable cause. Under the circumstances of this airport detention, the defendant's could not have freely consented to leave the open concourse area and move to a police station in the airport.  Given this show of authority, there is no indication the defendant were given a choice.  Without exceptionally clear evidence of consent, the defendants could not be moved from the concourse to the police station to be subjected to further detention and questioning, unless there was probable cause. This move amounted to an arrest of the defendants without probable cause. *United States v. Espinosa-Guerra, Id.*  Both defendants were subjected to extensive questioning by the police and they clearly were not free to leave.

### V. Search of April 20, 2005.[1]

On April 20, 2005, codefendant Conde was stopped in Beaumont, Texas while driving a Freightliner truck.  The passenger was Rigoberto Prieto-Perez who was the owner of the truck and trailer.  According to the DEA 6 report the stop was for a traffic violation.  The officer evidently questioned them about their travel itinerary and inspected Conde's log book to compare with their statements. The officer also ran Conde's prior record and learned that $70,000 had been seized in the past.  Then according to the report officer asked Prieto for consent to search the truck and was given consent.

---

[1] Defendant Marin is challenging the Constitutionality of the search of co-defendant Conde in this motion as we expect that co-defendant Conde will be joining in this motion.

9

The officer searched the interior of the cab.  As part of his search, he noticed fresh nick marks on screws of the sleeper bunk.  He "pulled down the lip of the panel" to find several plastic wrapped bundles of U.S. currency.  Conde and Prieto were both arrested.

The report gives no reason for this traffic stop.  No traffic violation is mentioned.  Even if there was an infraction to justify a valid traffic stop, the continued detention and questioning of Conde and Prieto exceeded the time necessary to issue a ticket.  The DEA 6 report does not state that the officer had any reasonable suspicion to further detain Conde and Prieto pursuant to *Terry* for questioning about his trips and to compare with his log book.  The detention was extended even longer for the officer to run Conde's arrest history.  The continued detention beyond the initial traffic stop was unreasonable without articulable suspicion.

The illegal detention here is similar to the Fourth Amendment violation that occurred in *United States v. Pruitt*, where the officer questioned the defendant in order to come up with reasonable suspicion to justify a search of the vehicle.  There was simply no reasonable basis to detain Conde for questioning and to compare his answers with the information in his log book.  Furthermore, the search and seizure of the log book violated the Fourth Amendment.  There is no indication that Conde consented to the search of this log book.  Finally, the search of the truck unreasonably exceeded the consent given by Prieto when the officer opened a panel of that was not a normal compartment.  If there was consent given, it would have included a search that involved taking apart the

10

sleeper bunk. It appears that the officer removed the paneling of the bunk and this search was more intrusive than what is reasonably understood will take place when a person gives consent to a vehicle search.

WHEREFORE, for the reasons set forth herein the Defendant Marin respectfully moves to suppress the Rule 404(b) evidence and requests a suppression hearing.

**KENNETH M. SWARTZ**
SWARTZ & LENAMON
New World Tower, Suite 2100
100 North Biscayne Boulevard
Miami, Florida 33132
Tel:305-579-9090
Fax:786-425-2380
Florida Bar No. 331929
ken@swartzlawyer.com

/S/_____
Kenneth M. Swartz

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and simultaneously served the foregoing document on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/_____
Kenneth M. Swartz

## SERVICE LIST: *UNITED STATES v. DANIEL ENRIQUE-MARIN*
## CASE NO 07-20973-CR-ALTONAGA

Sean Paul Cronin
Sean.P.Cronin@usdoj.gov
Assistant United States Attorney
11200 N.W. 20th Street, Suite 101
Miami, FL 33172
Tel: 305-715-7651

Percy Martinez
Percymartinezpa@yahoo.com
Two Alhambra Plaza, Suite 112
Coral Gables, Florida 33134
Tel:305-529-0001
Attorney for Defendant Jesus Garcia Morales

Marc D. Seitles
mseitles@seitleslaw.com
169 E. Flagler Street, Suite 1200
Miami, FL 33131
Tel.: 786-877-3997
Attorney for Evelio Cervantes Conde